COURT OF APPEALS
DECISION
DATED AND FILED

August 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2025AP550-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2022CF1357

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

BILLY J. OLDENBURG,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Eau Claire County: JOHN F. MANYDEEDS, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM. Billy Oldenburg appeals from a judgment convicting him, upon his no-contest plea, of possession of methamphetamine as a

repeat offender. The sole issue on appeal is whether the circuit court erred by denying Oldenburg's suppression motion.[1] Oldenburg contends that the arresting law enforcement officer lacked reasonable suspicion to expand the scope of a traffic stop to include a drug investigation. We affirm on the ground that the totality of the circumstances established reasonable suspicion to believe that Oldenburg was involved in illegal drug activity.

## BACKGROUND

¶2 The following facts were testified to at the suppression hearing and are not disputed by the parties on appeal.[2] Patrol Officer Sam Sperry of the Eau Claire Police Department was on duty shortly before midnight on a December evening when he observed a vehicle arrive at a residence that was under surveillance because it was known by law enforcement to be a place of frequent drug-related activity. A person, from whom Sperry was too far away to identify, exited the vehicle and returned to the vehicle within ten minutes and drove away.

¶3 Sperry followed the vehicle. As soon as he caught up to it, the vehicle quickly turned into a driveway, where it parked and remained without anyone exiting it. Sperry was then called away to assist in an investigation at another known drug location a few blocks away. Shortly thereafter, Sperry saw Oldenburg walking around a home that Sperry knew to be the site of "continuous problems for

---

[1] WISCONSIN STAT. § 971.31(10) (2023-24) authorizes review of a suppression ruling notwithstanding a defendant's subsequent plea of no contest. All references to the Wisconsin Statutes are to the 2023-24 version.

[2] The circuit court did not make specific findings of fact following the suppression hearing. However, if the court "fails to make a finding of fact that appears from the record to exist, an appellate court may assume the fact was determined in support of the decision." *State v. Angiolo*, 186 Wis. 2d 488, 495-96, 520 N.W.2d 923 (Ct. App. 1994). We will therefore accept as true the undisputed testimony provided at the suppression hearing.

drug-related activity including overdose deaths and drug sales." He also noted that Oldenburg "appear[ed] to be looking for something or someone" and seemed "generally out of place." Oldenburg approached another officer in the area and stated that he was looking for his vehicle.

¶4     When Sperry was no longer needed at the second drug investigation site, he returned to the location where he had last observed the vehicle parked in a driveway. Sperry saw the vehicle leave the driveway and again followed it. He performed a registration check and learned that the vehicle was registered to Oldenburg and that Oldenburg had a canceled driver's license. Sperry then initiated a traffic stop to investigate whether Oldenburg was illegally driving the vehicle.

¶5     Upon making contact, Sperry verified that Oldenburg was the driver and sole occupant of the vehicle. During their interaction, which was recorded on the officer's body camera, Sperry observed Oldenburg exhibit "multiple indicators of nervousness," including shaking and fidgety hands, lack of eye contact, taking rapid, shallow breaths, and making contradictory statements about his activities that night. For instance, Oldenburg told Sperry that he was returning from "Chippewa" to a house owned by a woman named Georgia, where he had been residing for several months, but he gave the wrong street number for that house.

¶6     Based upon all of this information, as well as Sperry's knowledge that Oldenburg had a drug-related criminal history, Sperry returned to his squad car and requested a K9 unit to respond to the scene of the traffic stop. Sperry conceded that, by that point, he had all the information he needed to issue Oldenburg a ticket for driving with a canceled license.

¶7     However, Sperry proceeded to investigate Oldenburg's possible involvement in drug activity before issuing a ticket. Sperry confronted Oldenburg

about his statement that he was coming from "Chippewa." Oldenburg claimed that his girlfriend had driven him to the neighborhood so that he could pick something up and that she had "gotten spooked" after the two had a fight. Sperry was unclear if Oldenburg or his girlfriend then jumped out of the vehicle; however, Oldenburg stated his girlfriend abandoned the vehicle and afterward Oldenburg had to search for it. Law enforcement eventually searched the vehicle in which Oldenburg was stopped and Oldenburg's person, which revealed the drugs and drug paraphernalia that are the subject of the suppression motion now before us.

## DISCUSSION

¶8 It is constitutionally permissible under the Fourth Amendment for a law enforcement officer to briefly detain an individual for investigative questioning when there exists a reasonable suspicion, based upon specific and articulable facts together with rational inferences drawn from those facts, that the individual is or has been engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). An investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). If an officer becomes aware during an investigatory stop of facts sufficient to give rise to a reasonable suspicion that the person has committed or is committing a distinct offense, however, the purpose of the stop may expand, and the length of the stop may be properly extended to investigate the new suspicion. *State v. Colstad*, 2003 WI App 25, ¶19, 260 Wis. 2d 406, 659 N.W.2d 394. We will independently determine whether the established facts satisfy applicable constitutional provisions. *State v. Harris*, 2017 WI 31, ¶9, 374 Wis. 2d 271, 892 N.W.2d 663.

¶9 Here, the parties agree that Sperry expanded the initial scope of the stop beyond investigating whether Oldenburg had been driving without a valid

4

driver's license in order to determine whether he was also involved in illegal drug activity. The question before us is whether Sperry had reasonable suspicion to do so. We conclude that he did.

¶10    By the time that Sperry requested a K9 unit and began the drug investigation, Sperry had made observations from which he could fairly infer that Oldenburg, who had a prior history of drug use, had stopped by two known drug houses in quick succession in the middle of the night. Oldenburg had taken what could be viewed as evasive action by turning into a driveway without exiting his vehicle when followed by a police squad car. Even without the subsequent questioning about Oldenburg's movements that evening, Sperry could view Oldenburg's assertion that he was coming from "Chippewa" to be in conflict with Sperry's own observations of Oldenburg's movements. And finally, Sperry's body camera footage confirmed his testimony that Oldenburg seemed excessively nervous throughout the encounter.

¶11    Oldenburg argues that the above circumstances did not provide a basis for Sperry to believe he was engaged in illegal drug activity. For instance, he asserts that there was no evidence showing that he operated the vehicle near the drug house or when it turned into a driveway and no one exited the vehicle. However, it would be reasonable for an officer to infer that Oldenburg operated the vehicle at those times because Oldenburg was later located driving the vehicle, and it was registered to him.

¶12    Oldenburg relies upon *State v. Betow*, 226 Wis. 2d 90, 593 N.W.2d 499 (Ct. App. 1999), and *State v. Gammons*, 2001 WI App 36, 241 Wis. 2d 296, 625 N.W.2d 623, to argue that the evidence demonstrating a nervousness and his weak connection to the drug houses was not enough for reasonable suspicion. He

also asserts that our supreme court noted in *State v. VanBeek*, 2021 WI 51, ¶¶7, 60-61, 397 Wis. 2d 311, 960 N.W.2d 32, that an officer's knowledge of a prior conviction or prior overdose is insufficient to establish reasonable suspicion.

¶13   We conclude, however, that the totality of the above-mentioned circumstances would lead a reasonable officer to believe that Oldenburg was engaged in illegal drug activity, even if, as Oldenburg argues, the individual circumstances cited above, standing alone, may each be insufficient to establish reasonable suspicion.  Because there was reasonable suspicion to conduct a distinct drug investigation, the circuit court properly determined that law enforcement did not impermissibly extend the traffic stop and denied the suppression motion.

*By the Court.—*Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.